### OTIS THOMPSON *v.* ALEXANDER KILBORNE.

*Attorney and client.   Confidential communications.   Evidence.*

A conversation with a lawyer, in reference to matters about which it was probable there would be litigation, but in which there was no retainer of the lawyer, nor anything showing that his advice was sought to regulate the future conduct of the other party in relation thereto, is not privileged from disclosure as a confidential communication between client and counsel.

The prevailing practice of the legal profession in this state, in giving opinions and advice upon legal subjects, without particular study and examination in reference thereto and corresponding pay or a distinct retainer, commented on and condemned.

Where to a declaration for the breach of a contract in not furnishing a proper and suitable kiln and dry-house, in which to secure certain hops, the defendant plead that he did prepare a suitable kiln and dry-house, ready for use when it was required, and according to the true intent and meaning of the contract, and to the full satisfaction of the plaintiff; evidence that the plaintiff consented that a new kiln and dry-house need not be built, but that one of his own might be, and that it accordingly was used, and the plaintiff paid for the use of it, is admissible, and has a tendency to support the issue presented by the defendant's plea.

COVENANT for the alleged breach by the defendant of his contract under seal, dated May 8th, 1844, agreeing, among other things, to furnish for the use of the plaintiff, for a hop-yard, for the period of nine years thereafter, five acres of the defendant's land, in Stanstead, and to prepare the necessary kiln, dry-house &c., in said yard, for the purpose of preparing the hops raised on said five acres for market,—the plaintiff by said contract agreeing to cultivate, raise and prepare the hops for market, and deliver one-half of them to the defendant: the breaches complained of being the refusal of the defendant to allow the plaintiff to occupy said five acres as a hop-yard after the fall of 1847, and the neglect of the defendant to prepare the necessary kiln, dry-house &c. in 1846. The defendant filed several special pleas, averring performance on his part, and non-performance by the plaintiff of his part of the contract. The allegations, both in the declaration and plea, and the terms of the contract, which the supreme court were called upon particularly to consider, are sufficiently set forth in their opinion, and in the argument of the defendant's counsel. The cause was tried in the county court, by a jury, at the December Term, 1855,—POLAND, J., presiding,—when a verdict was returned for the defendant.

The only exception reserved by the plaintiff, upon that branch of the case which related to the alleged refusal of the defendant to permit the plaintiff to occupy the yard after the fall of 1847, was in reference to the admissibility of a part of the deposition of Elbridge D. Johnson, formerly of Derby, but now residing in Peoria, Illinois, offered by the defendant, which the plaintiff claimed related to a communication made by him to the said Johnson, as his counsel; the part of the deposition objected to, and that part in reference to the deponent's understanding of the relation in which he stood to the plaintiff, being as follows.

" The said Thompson came to me at my office, and had, considerable chat about his contract with the said Kilborne. Whether the conversation was professional, or semi-professional, or neither, I am at a loss to determine, but I will state the circumstances, and leave the matter to be determined by higher authority. Thompson introduced the conversation by inquiring about his contract with Kilborne for carrying on the hop-yard. I am unable to state its exact purport, but am able to state the substance. He inquired if he could not make use of something which had occurred between him and Kilborne to avoid the effect of his contract to carry on the yard. I am unable to state whether it was something Kilborne had said or done in the matter, and am unable to say what reply I gave him, but he then said he should not carry on the yard again, and he thought the matter he stated would protect him in so doing, and he inquired of me if I did not think so.*

" The said Thompson intended to draw from me a legal opinion, I have no doubt, and that he did not expect or intend to pay anything for it, I have as little doubt; that I stated to him what was the law applicable to the case stated, is probable, but that I did not expect to receive any compensation for counsel, or intend to charge anything, is quite certain. I should state, perhaps, that Mr. Thompson was, when I knew him, a man somewhat given to legal reflections, and was supposed to have a slight taste for litigation, and was seldom without a controversy on hand, or one in prospect; and we were for many years neighbors and on friendly terms, and I dare say we have had some hundred just such legal conversations as the one above detailed, about his numerous controversies,

which were all equally fruitless of fees, except when he got into a suit, when he usually employed me as counsel, and paid me, not what I charged for my services, but what we agreed upon whenever we got through with the not over agreeable process of a settle-. ment of our accounts. It is possible, also, that the freedom with which I was accustomed to converse with him on legal subjects, and without charge, may have led him into the habit of getting his law for nothing from me, at this and other times ; at all events; it is quite as much my fault as his that I am not able to decide whether the conversation in question was a privileged communication or not. I am unable to say whether he understood our conversation as a consultation, or just a chat to fortify a determination he had already taken about the business. I may say that a different locality has taught me a much more sensible practice in such matters, and further deponent saith not."

The court allowed the deposition to the point * above designated to be read to the jury, to which the plaintiff excepted.

In reference to the alleged breach in not erecting a hop-house &c., the plaintiff's testimony tended to prove, that in the season of 1845, he advised the defendant not to build a hop-house in the yard that year, as the crop looked so unpromising that he considered it doubtful whether the land would be found suitable for growing hops, but that in 1846 he called upon the defendant to erect a hop-house for the use of said yard, and that the quantity of hops grown that year was such as to make it necessary, but that the defendant neglected to build one that year, whereby the plaintiff was obliged to have the hops taken to the plaintiff's hop-house in Derby, and cured there, whereby the hops were injured, and and the plaintiff subjected to expense and difficulty in getting them back into Stanstead.

The defendant then gave evidence tending to prove that the plaintiff advised him not to erect a hop-house, in 1846, for the same reason as in 1845, and assented that one should not be built that year, and that an agreement was made that the hops should be carried by the defendant from the yard to the plaintiff's hop-house in Derby, and cured there ; that they were so carried, and that he paid the plaintiff for the use of his hop-house

for that year, and it was conceded by the plaintiff that the hops were drawn by the defendant, and payment made for the use of the hop-house, as the defendant claimed.

The plaintiff's counsel claimed, and requested the court to charge the jury, that if they found that such a contract was made between the plaintiff and the defendant in 1846, whereby the plaintiff consented that said hop-house should not be erected that year, still that could not be made available as a defense to the plaintiff's claim, because such defense was not admissible under the defendant's pleas. But the court declined so to charge, but charged that if they found that the plaintiff consented that said hop-house should not be built in 1846, it was an answer to the plaintiff's claim in that respect. To the refusal to charge as requested and to the charge as given the plaintiff excepted.

*Cooper & Bartlett* for the plaintiff.

The interview between Thompson and Johnson was evidently professional.

That they had an interview Johnson is sure, but what was said he cannot tell, further than he says the result sought was apparent, and he is able to tell what it was, but cannot repeat a word said by Thompson.

This deposition should be excluded, because it was a confidential communication between attorney and client.

The conversation was something besides a casual one, and because Johnson did not charge, it does not make it any the less confidential. That it was an interview between these parties when professional advice was sought, is certain, and it was so understood by both. That should be confidential, and is so. 2 Starkie on Ev. 375.

The defendant, having plead a performance of his covenant to build a hop-house, was not entitled, under that plea, to show an excuse for non-performance. Such excuse should have been plead.

*J. H. Prentiss* and *Peck & Colby* for the defendant.

I. To characterize the communication testified to by Johnson as a privileged one, there must have been, at the time, a retainer, or at least an action threatened, or a preparation for a suit, or some

act or avowal by the party to indicate the relation which he under-. stood to subsist between himself and the attorney; *Dixon* v. *Parmelee*, 2 Vt. 188; *Wetherbee et al.* v. *Ezekiel*, 25 Vt. 47.

The authorities are that a general retainer is not sufficient to protect communications had on a subject which afterwards gives rise to a suit; 2 Stark. Ev. 230–231. The rule does not extend to communications made to an attorney if he was not employed as such, nor prohibit a disclosure of privileged communications by a third person who accidentally overhears the conversation, for it is owing to the negligence of the client himself; 2 Stark. Ev. 229; 4 T. R. 753.

The same reason should apply to this case. There being no action pending when the conversation was had, none threatened, no retainer, if the plaintiff meant or desired to repress a disclosure it is his negligence and fault that he did not, *at the time*, guard it by some injunction, or, at least, an intimation of confidence.

2. The second count in the declaration sets forth that the defendant covenanted "to furnish the necessary kiln, dry-house, press and storage for the purpose of preparing said hops for market," and the averment of breach is, that the defendant " did not furnish a suitable and proper dry-house, kiln, &c., in which to secure the hops raised on said hop-yard," &c. The answer of the defendant, in his second plea, is, in the language of the contract, that he " did prepare and have ready for the use of said hop-yard, convenient thereto, a suitable and convenient kiln or dry-house, and press, for the drying and pressing of such hops as might be raised on said hop-yard; and the said dry-house and press were, in every particular, prepared ready for use when the same was required for the purposes aforesaid." And the defendant, in his fourth plea, says that he did "furnish a suitable and proper dry-house," &c., "in which to secure the hops raised upon said hop-yard, according to the true intent and meaning of the said writing obligatory, and to the full satisfaction of the said plaintiff." All that can be demanded of the defendant, under the pleadings, is, to show that the house was prepared and ready for use when it was required for the purposes contemplated in the contract. The agreeement and concurrent admission of the parties should be the best and conclusive evidence that it was not required 'in 1845. These were treated as such evidence

by the plaintiff, in relation to that year. The jury found that a similar agreement, and a like concurrent admission, was made by the parties in 1846, concerning the house for that year.

The proof is that the defendant did provide a suitable dry-house, &c., in 1846, viz., the one owned by the plaintiff. The contract does not require, nor do the pleadings claim, that he was bound to *build* a dry-house, at any time, or under any circumstances, or that a dry-house was required to be on the defendant's land, or that the plaintiff's house, which was used in 1846, was not convenient to the defendant's hop-field.

The opinion of the court was delivered by

REDFIELD, CH. J. I. The first question made in the present case is, whether the plaintiff's communication to Johnson was under the confidence of the relation of counsel and client. It seems to us not to be of that character. There was no retainer, and nothing to show that the plaintiff sought the advice with any view to regulate his future conduct, in regard to a pending or expected litigation. And, had any retainer been charged, there is every reason to believe the plaintiff could justly have resisted the claim, upon the facts stated by Johnson. And, had Johnson, the next hour, received an application for counsel, and retainer, upon the other side, no one can question his being at full liberty to engage.

This anomolous relation testified to in the deposition, and which seems so much to puzzle Johnson, and which he so justly deprecates, certainly grows out of a too common facility, upon the part of the profession, in this state, to undervalue their professional and official character, as sworn officers of the highest judicial tribunal in the state. The practice of giving advice, upon legal subjects, without study and examination, and without corresponding pay, and a distinct retainer, is certainly a vicious one. The practice of the profession of giving street advice misleads the general opinion in regard to the value and dependence upon such advice. It would no doubt be better for the profession, and their clients both, if all professional advice, in regard to the prosecution and defense of claims, were given in writing, as it is in many places, and both parties are thereby put under the proper responsibility in regard to it, the one to pay for it, and the other to make it hold good, or to

show, at least, that it was not notoriously bad. But, at all events, we cannot regard a conversation of this loose and indefinite character as entitled to the protection of professional confidence.

II. In regard to the question, whether the evidence, on the part of the defendant, tended to support the issue, we have had more doubt. But it is obvious the defendant would not only be entitled to give evidence coming fairly within the terms of the issue, as closed upon the record, but also such testimony as came within the construction of the issue which the plaintiff had induced the county court to adopt.

The declaration upon this part of the case is, that the defendant covenanted to "furnish the necessary kiln, dry-house, &c., for the purpose of preparing the hops for the market." And the breach assigned is, that he "did not furnish a proper and suitable dry-house, kiln, &c., in which to secure the hops."

The plea to this part of the declaration is, that the defendant "did prepare" — "a suitable and convenient kiln and dry-house, and that it was prepared and ready for use," when "required for the purpose" of securing the crop, &c. 2. That he did prepare, &c., "according to the true intent and meaning of the said contract, and to the full satisfaction of the plaintiff."

The words of the contract are, "to prepare a suitable and convenient kiln or dry-house, to be prepared and ready for use, when the same shall be required."

The substance of the evidence offered and received upon the trial, and which it is claimed did not come within the issue, was, that the plaintiff, in 1846, directed the defendant not to build the dry-house that season, and consented to have his own dry-house used for that purpose, and that the defendant drew the hops to the plaintiff's dry-house, and paid him for the use of it, and the plaintiff made no objection, but assented fully to this arrangement.

This seems to us to meet the issue upon both pleas. It is furnishing the dry-house as soon as required for the purposes of the contract, and also to the satisfaction of the plaintiff, either of which would be sufficient.

If this were a plea of performance generally, and the proof of a dispensation with performance, it might merit a different consideration. The plea is only of a qualified performance, or perform-

ance to the plaintiff's acceptance, and the proof is that very thing. If the dry-house had never been built, but the plaintiff had consented to have the kiln drying done at his own kiln, and received pay for the use of his kiln, and made no objection, it would be, furnishing a kiln to his satisfaction.

Judgment affirmed.